JUDGE BUCHWALD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

11 CIV 5948

—————————————————————X

FLOYD BANKS,

Civ. No. _____

                   Plaintiff,

**COMPLAINT**

— against —

AUG 24 2011

STERLING INFOSYSTEMS, INC.,

JURY TRIAL DEMANDED
S.D.N.Y.
CASHIERS

                   Defendant.

—————————————————————X

Plaintiff Floyd Banks, by his attorney the Community Service Society of New York,

alleges the following:

## PRELIMINARY STATEMENT

1.     Floyd Banks brings this action under the federal and New York Fair Credit

Reporting Acts ("FCRAs") because he was denied employment after Defendant Sterling

Infosystems ("Sterling") erroneously reported to a prospective employer a series of arrests and

convictions that did not belong to him. Instead, the arrests and convictions belonged to a

deceased individual who had used Mr. Banks' name, date of birth, and social security number

when committing crimes. Sterling failed to follow reasonable procedures to ensure maximum

possible accuracy when it failed to recognize that these records belonged to a dead person and

could not possibly relate to Mr. Banks. For the same reason—and because its report was

inconsistent with readily available public records—Sterling also failed to maintain strict

procedures to ensure the public records it reported were complete and up-to-date. Finally,

Sterling maintained on file and reported information about non-pending arrests and criminal

charges that did not result in criminal convictions, and Sterling also reported records of

conviction that antedated its report by more than seven years.

1

## JURISDICTION AND VENUE

2. Jurisdiction is conferred by 15 U.S.C. § 1681(p), 28 U.S.C. § 1331, and, for supplemental jurisdiction over the New York state law claims, 28 U.S.C. § 1367(a).

3. Venue is proper under 28 U.S.C. § 1391(b) because Defendant is located in the Southern District of New York.

## PARTIES

4. Plaintiff Floyd Banks is a natural person residing in New York state and a "consumer" as defined by 15 U.S.C. § 1681a(c).

5. Upon information and belief, Defendant Sterling is a Delaware corporation duly authorized and qualified to do business in New York and has its principal place of business at 249 West 17th Street in New York, New York.

6. Upon information and belief, Sterling, established in 1975, is a privately held corporation that provides employment and background screening services.

7. Upon information and belief, Sterling is paid by its customers to prepare consumer reports on consumers.

8. Upon information and belief, to prepare a consumer report, Sterling assembles or evaluates consumer credit information or other information about consumers, including public record information.

9. Upon information and belief, Sterling prepares more than 25 consumer reports per year.

10. Upon information and belief, preparing consumer reports constitutes more than 10% of Sterling's business.

11.     Upon information and belief, Sterling also owns and operates Abso, Inc., a privately held corporation that provides employee background screening.

12.     Upon information and belief, Abso, Inc. has offices in Rocklin, California; Denver, Colorado; and Louisville, Kentucky.

13.     Upon information and belief, Sterling is affiliated with American Background Information ("ABI"), which has offices in Winchester, Virginia.

14.     Upon information and belief, Sterling prepares and disseminates its reports by means of interstate commerce.

15.     Sterling is a "consumer reporting agency" ("CRA") under 15 U.S.C. § 1681a(f) and N.Y. General Business Law 380-a(e).

### FACTUAL ALLEGATIONS

16.     In August 2009, Mr. Banks applied for employment with White Glove Community Care ("White Glove"), a staffing agency for hospitals and healthcare facilities in New York and New Jersey.

17.     The job would have placed Mr. Banks in temporary nursing positions at hospitals and health care facilities through White Glove.

18.     The job at White Glove paid $10 per hour and had medical benefits.

19.     Upon information and belief, Mr. Banks would not have earned more than $25,000 per year at White Glove.

20.     Mr. Banks was qualified for the position with White Glove.

21.     Currently, and at the time he applied, he was a certified nursing assistant.

22.     Prior to applying at White Glove, Mr. Banks worked as a per diem nursing technician at St. Vincent's Hospital for six months.

23.     As a non-union temporary employee, Mr. Banks was told that he could work no longer than six months pursuant to St. Vincent's collective bargaining agreement with its union, so he sought employment with White Glove.

24.     Because of his qualifications, White Glove hired Mr. Banks and sent him to an employee orientation at Jamaica Hospital in Queens, New York for one day.

25.     The next day, he was sent to White Glove's office in Brooklyn to undergo a series of occupational tests.

26.     Mr. Banks passed all of the tests, including a drug test, and he was told that someone would contact him the following day about his background check because a supervisor had to review it.

27.     The next day, Mr. Banks received a call from a White Glove recruiter saying that his employment was terminated because of his criminal background.

28.     Mr. Banks tried to explain that he had never been arrested or convicted in Pennsylvania.

29.     The recruiter said there were too many incidents to hire him.

30.     As a result of losing his job with White Glove, Mr. Banks suffered emotional distress.

31.     Upon information and belief, White Glove paid Sterling to perform a pre-employment criminal background check on Mr. Banks on or about August 26, 2009.

32.     Upon information and belief, Sterling did not inquire and did not know whether or not White Glove's request concerned a job with an annual salary that equaled, or could reasonably be expected to equal, more than $25,000.

4

33.    Sterling prepared and sent White Glove a written consumer report that attributed a

number of arrests and criminal convictions to Mr. Banks that did not belong to him.

34.    These arrests and convictions included weapons possession and possessing,

buying, and selling controlled substances in Pennsylvania.

35.    Mr. Banks has never been arrested or convicted of a crime in Pennsylvania.

36.    In particular, Sterling reported the following arrest and conviction information

about Mr. Banks:

a.    Docket CR000006905 in Lehigh County, Pennsylvania:
   i.    The report lists one charge: "simple assault."
   ii.   The case was disposed on May 5, 2005, but no disposition or sentence
         information is reported.
   iii.  This charge does not belong to Mr. Banks.

b.    Docket 031GT0400858101 in "VA_AOC" County:
   i.    The report lists three charges: "Drive Susp (M)," "Reckless Driving (M),"
         and "Fail Report to Jail."
   ii.   The defendant was guilty of the first two charges on March 1, 2005.
   iii.  These charges do not belong to Mr. Banks.

c.    Docket MC-51-CR-1258781-200 in Philadelphia County, Pennsylvania:
   i.    Sterling's report is missing the last digit, which indicates the year the case
         began, but the correct year is 2001 according to court records.
   ii.   No arrest date is listed, but the correct one is December 21, 2001
         according to court records.
   iii.  The disposition date is incorrectly listed as December 8, 2003 when it
         should be June 18, 2002 according to court records.
   iv.   The defendant had *seventeen* charges, including "Sales of Drugs" and
         multiple counts of "Possession Arms—Conv Crime of Violence" and
         possessing controlled substances.
   v.    The defendant was guilty of three counts of "Knowing/Intentionally Poss
         Controlled Subst," "Sales of Drugs," and "MFG/DEL/OR Poss W/I MFG
         or Deliver Contrl Subs."
   vi.   These charges do not belong to Mr. Banks.

d.    Docket MC-51-CR0630861-200 in Philadelphia County, Pennsylvania:
   i.    Sterling's report is missing the last digit, but the correct year is 2003
         according to court records.
   ii.   No arrest date is listed, but the correct one is June 24, 2003 according to
         court records.

5

    iii.    The disposition date is incorrectly listed as June 3, 2005 when it should be August 25, 2003 according to court records.

    iv.    The defendant had eight charges for drug and weapons possession.

    v.    The first four charges were dismissed due to "abatement" and the second four were "held for court."

    vi.    These charges do not belong to Mr. Banks.

e.    Docket 2007NY009333 in New York County, New York: This is the only conviction on Sterling's report that pertains to Mr. Banks.

    i.    Mr. Banks was charged with and pled guilty to Criminal Possession of a Controlled Substance in the seventh degree, a Class A Misdemeanor, on February 2, 2007.

    ii.    Sterling's report incorrectly lists the date of conviction as April 9, 2007.

f.    Docket MC-51-CR-1104871-2003 in Philadelphia County, Pennsylvania:

    i.    Four charges of weapon and drug possession are listed.

    ii.    All charges were dismissed.

    iii.    These charges do not belong to Mr. Banks.

g.    Docket CP-51-CR-09000891-2003 in Philadelphia County, Pennsylvania:

    i.    Four charges of weapon and drug possession are listed.

    ii.    All charges were dismissed due to "abatement."

    iii.    These charges do not belong to Mr. Banks.

h.    Docket CP-51-CR-0710411-2002 in Philadelphia County, Pennsylvania:

    i.    Three charges of weapon possession are listed.

    ii.    All charges were "nolle prossed."

    iii.    "Nolle prossed" means the district attorney declined to prosecute the case and the defendant was not found guilty of any crime.

    iv.    These charges do not belong to Mr. Banks.

i.    Docket MC-51-CR-0501672-2000 in Philadelphia County, Pennsylvania:

    i.    The defendant was found guilty of three charges of drug possession and sale.

    ii.    The arrest date is listed incorrectly on Sterling's report as February 19, 2002—two years *after* the case commenced, according to the docket number—when it should be May 1, 2000 according to court records.

    iii.    These convictions do not belong to Mr. Banks.

j.    Docket MC-51-CR-1258781-2001 in Philadelphia County, Pennsylvania:

    i.    The defendant was found guilty of two charges of drug possession.

    ii.    These convictions do not belong to Mr. Banks.

37.    Upon information and belief, a case is dismissed due to "abatement" in

Pennsylvania when the defendant *dies before trial.*

38.     Upon information and belief, two of the entries on Sterling's report—docket numbers MC-51-CR0630861-200 (sic) and CP-51-CR-09000891-2003—actually concerned a deceased individual.

39.     Upon information and belief, Mr. Banks is a victim of identity theft because his wallet was stolen many years ago.

40.     As a result, many public records of arrest and conviction entered under his name, date of birth, and social security number do not belong to him.

41.     Nevertheless, Sterling's report contained many entries with information that did not match official Pennsylvania Court Summaries and Docket Sheets concerning the individual who identified himself as Floyd Banks.

42.     These Court Summaries and Docket Sheets are readily available online at http://ujsportal.pacourts.us/DocketSheets/CP.aspx.

43.     Finally, Sterling's report listed twelve addresses where Mr. Banks has never lived.

44.     Mr. Banks challenged the accuracy of Sterling's report with a letter dated November 1, 2010 and sent by certified mail.

45.     When he did not receive a response from Sterling within 30 days, Mr. Banks filed a second challenge by letter dated December 8, 2010; also sent by certified mail.

46.     On or about December 29, 2010, Sterling corrected Mr. Banks' report, removing all of the arrest, conviction, and address history that did not belong to him, and Sterling sent copies of the corrected report to Mr. Banks and White Glove.

47.     Sterling's reinvestigation revealed that all of the information Mr. Banks claims is erroneous in this complaint was actually incorrect.

48.     Mr. Banks is currently employed as a certified nursing assistant.

## VIOLATIONS OF LAW

FIRST CAUSE OF ACTION:
### STERLING FAILED TO MAINTAIN REASONABLE PROCEDURES TO ENSURE MAXIMUM POSSIBLE ACCURACY

49.     CRAs like Sterling must use "reasonable procedures" to ensure "maximum possible accuracy" of the information they report 15 U.S.C. §1681e(b); and must "maintain reasonable procedures designed to assure maximum possible accuracy." N.Y. Gen. Bus. Law 380-j(e).

50.     The FCRAs require Sterling to understand the legal significance of the words it reports.

51.     Sterling did not maintain or use reasonable procedures when assembling and reporting information on Mr. Banks because it reported information about a dead person, who could not possibly be Mr. Banks.

SECOND CAUSE OF ACTION:
### STERLING FAILED TO MAINTAIN STRICT PROCEDURES TO ENSURE THE PUBLIC RECORD INFORMATION IT REPORTED WAS COMPLETE AND UP TO DATE

52.     When reporting public information for employment purposes that is likely to have adverse effect on a consumer, CRAs like Sterling must either notify the consumer or maintain strict procedures to ensure the public record information they report is complete and up to date. 15 U.S.C. § 1681k; N.Y. Gen. Bus. Law 380-g.

53.     Sterling did not regularly update its public record information.

54.     Sterling did not notify Mr. Banks that it was reporting public records of arrest and conviction under his name.

55.     Sterling did not maintain strict procedures to ensure the public record information it reported was complete and up to date because its consumer report contained information about a deceased individual.

56.     Sterling did not maintain strict procedures to ensure the public record information it reported was complete and up to date because the information it reported was incomplete and inconsistent with readily available public records.

THIRD CAUSE OF ACTION:
STERLING MAINTAINED ON FILE AND REPORTED INFORMATION
ABOUT NON-PENDING ARRESTS AND CRIMINAL CHARGES THAT
DID NOT RESULT IN CONVICTIONS

57.     In New York, CRAs like Sterling cannot report *or even maintain on file* information about a non-pending arrest or charge when it did not result in a criminal conviction. N.Y. Gen. Bus. Law § 380-j(a).

58.     By maintaining on file and reporting the "Simple Assault" charge on Docket CR000006905 in Lehigh County, Pennsylvania that was disposed on May 5, 2005, Sterling violated § 380-j(a) because it did not report the charge's disposition.

59.     By maintaining on file and reporting four charges that were dismissed on Docket MC-51-CR-1104871-2003, Sterling violated § 380-j(a) because the charges did not result in any criminal convictions.

60.     By maintaining on file and reporting three charges that were "nolle prossed" on Docket CP-51-CR-0710411-2002, Sterling violated § 380-j(a) because the charges did not result in any criminal convictions.

## FOURTH CAUSE OF ACTION:
## STERLING REPORTED RECORDS OF CONVICTION THAT OCCURRED
## MORE THAN SEVEN YEARS BEFORE ITS REPORT WAS GENERATED

61.    In New York, CRAs like Sterling cannot create consumer reports for employment

purposes that contain "records of conviction of crime which, from date of disposition, release, or

parole, antedate the report by more than seven years," N.Y. Gen. Bus. Law § 380-j(f)(1)(v);

unless the annual salary will equal $25,000 or more. § 380-j(f)(2)(iii).

62.    Sterling violated N.Y. General Business Law § 380-j by reporting Dockets MC-

51-CR-0501672-2000 and Docket MC-51-CR-1258781-2001, both of which antedate Sterling's

August 26, 2009 report by more than seven years.

### CLAIM FOR RELIEF

WHEREFORE, Plaintiff Floyd Banks respectfully demands judgment:

1.    Awarding, in an amount to be fixed at trial, actual damages for pecuniary loss and
      emotional distress caused by Defendant's illegal conduct;

2.    Alternatively, awarding statutory damages for each violation of law listed above;

3.    Awarding, in an amount to be fixed at trial, punitive damages;

4.    Awarding reasonable attorneys' fees and costs;

5.    Permanently enjoining Defendant, and its agents and employees, from:

    a.    Maintaining on file and reporting any record of a New York arrest or charge that
          did not result in a criminal conviction;

    b.    Reporting within New York state any arrest or charge that occurred outside of
          New York state that did not result in a criminal conviction; and

    c.    Continuing to prepare and sell credit reports to third parties that do not comply
          with N.Y. General Business Law §§ 380-j and 380-g; and

    Ordering Defendant to adopt and enforce policies and procedures to ensure future
    compliance with N.Y. General Business Law §§ 380-j and 380-g; and

6.    Granting such other and further relief as this Court finds just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, a trial

by jury in this action.

Dated: August 24, 2011
New York, NY

Respectfully submitted,

Community Service Society
*Attorneys for Plaintiff Floyd Banks*

By:

Paul Keefe, Staff Attorney (PK1618)
Judith Whiting, General Counsel (JW8665)
Kimberly Westcott, Associate Counsel (KW2900)
105 E. 22nd Street, Second Floor
New York, New York 10010
(212) 614-5339
Fax: (212) 260-6218

11